### Stella Dinsmore Davis v. Irwin J. Davis

[154 A2d 463]

May Term, 1959.

Present: **Hulburd, C. J., Holden, Shangraw, Barney and Smith, JJ.**

Opinion Filed September 1, 1959.

*Ryan, Smith & Carbine* for the petitioner.

*Edwin W. Lawrence* and *Donald M. French* for the petitionee.

**Barney, J.** The petitioner here was the libellee in an uncontested divorce case heard in the June Term, 1956, of Windsor County Court. On July 6, 1956, the Court made its order incorporating therein the terms of a stipulation between the parties with respect to the disposition of their real and personal property, custody and maintenance of the minor child, attorneys' fees and alimony payments to the libellant. In September, 1958, on motion of the petitioner, the cause was brought forward and his petition to modify the terms of the order with respect to alimony payments was heard.

At the hearing testimony by way of cross-examination was elicited from the petitioner to the effect that he had not complied with the provisions of the original stipulation and order requiring him to make payments on principal and interest on a certain mortgage obligation on real estate decreed to the petitionee. At that time petitionee moved that the petition be dismissed on the ground that petitioner ought not to be heard while not in compliance with the terms of the order of the court. This motion was denied and petitionee granted an exception.

At the close of the hearing the court amended the order in favor of the petitioner, whereupon the petitionee asked that her exceptions to the court's failure to dismiss the petition on the grounds of petitioner's noncompliance again be noted, which was done.

■ Petitionee contends that the court erred in proceeding with the hearing and giving judgment in favor of the petitioner in the face of a showing that petitioner was in default. The transcript discloses that on direct examination the petitioner had testified that he had reached an agreement with the mortgagee to suspend principal payments while his son, the child of the parties, was attending Norwich University. The interest

payments were not in default. Petitionee calls our attention to no evidence indicating that her use and possession of the premises was in any way threatened or abridged because of this arrangement, and we find none. Nor had the petitionee brought any petition for contempt based on this alleged default. The language of the statute involved, V. S. 47, §3249, 15 V. S. A. §758, is permissive, not mandatory, in its terms and gives the court the same powers in revision as it has in making an original decree. There is no statute limiting the court's power to entertain such petition on account of any default or act in contempt on the part of a petitioner. It is apparent, therefore, that the court has the same wide discretion with respect to these petitions as it has been accorded in original actions concerning alimony and support. *Whitcomb* v. *Whitcomb*, 115 Vt 331, 335, 58 A2d 814. No abuse of discretion appears under the circumstances of this case and petitionee's exceptions are not sustained. *Shaw* v. *Shaw*, 99 Vt 356, 358, 133 A 248.

At the close of all the evidence the court recessed to consider the matter. After the recess, in the presence of petitionee's counsel, the court made its entry which modified the original judgment order in favor of the petitioner by reducing the bi-weekly alimony payments from $150.00 to $75.00. Petitionee thereupon requested and was granted exceptions to the order of the court. Petitionee next moved that the court make written findings. The court denied the motion giving the petitionee an exception. This is claimed by the petitionee to be an abuse of discretion.

■ ■ The provisions of V. S. 47 §2121, 12 V. S. A. §2425, requiring findings in cases triable by jury are not applicable here. It is therefore incumbent upon the parties to make timely indication to the trier of fact that findings are desired. To deny to the court the discretionary right to refuse to grant a motion for findings first made after rendition of judgment would, in effect, extend to all triable cases the requirements of that statute and make findings mandatory on motion. This is clearly beyond the intent and requirement of the statutory language, which specifically limits its operation to cases triable

by jury. It cannot be said that there is any breach of judicial duty to indicate the factual basis of an adjudication when the only request therefor comes after the rendition of judgment. The request for findings came too late and petitionee's exception is not sustained. *Sage* v. *Sage,* 115 Vt 364, 367, 61 A2d 557.

■ The remaining question briefed by the petitionee is her exception to the judgment order. She contends, correctly, that the doctrine stated in *Sand* v. *Sand*, 116 Vt 70, 69 A2d 7, puts upon the petitioner the burden of pleading and proving such change in circumstances or conditions since the original decree or order to be amended was made as to justify discretionary modification by the trial court. The weight and sufficiency of the evidence in that regard were for the trier of fact, and its determination must stand unless it appears as a matter of law that there was no evidentiary support for its action. *Mc Kinney* v. *Kelley*, 120 Vt 299, 314, 141 A2d 660.

■ In the absence of findings of fact the decree will be affirmed if the evidence discloses sufficient facts to support it. *Sage* v. *Sage, supra*, 115 Vt 364, 61 A2d 557. The transcript discloses evidence from which the following facts may be inferred in support of the decree:

At the time of the hearing the petitioner was 68 years old, and his income was derived solely from the presidency of a corporation engaged in general insurance brokerage, of which he was the principal stockholder. In 1956 his income amounted to $10,240, in 1957 $13,000, and in 1959 his anticipated income was $10,400. During 1957 and 1958 the corporation lost two substantial industrial accounts representing more than four thousand dollars because the companies both ceased operations in Vermont. During 1958 he was assessed $2123.44 for federal and state tax deficiencies for 1955 and 1956. At the time of the hearing on October 15, 1958, petitioner's total indebtedness amounted to $43,532.44, an increase of $4500.00 since the divorce hearing in 1956. In 1958 state and federal income taxes, social security, life insurance premiums, interest on indebtedness and support and education payments for the child of the parties amounted to $6111.74 leaving $4288.26 of

the anticipated 1958 income, from which was to be deducted $3600 for petitionee's support under the existing order. This would leave the petitioner about $700 for the year for his personal support and maintenance.

In the light of the foregoing, and in view of the wide discretion afforded the trial court in matters of alimony and support in divorce cases, it has not been made to appear here that the action of the trial court in amending the order was so unreasonable and unjust, or based upon grounds so untenable, as to amount to an abuse of discretion. *Raymond* v. *Raymond*, 120 Vt 87, 96, 132 A2d 427; *McKinney* v. *Kelley*, *supra*, 120 Vt 314, 141 A2d 660; *Whitcomb* v. *Whitcomb*, *supra*, 115 Vt 335, 58 A2d 814.

*Decree affirmed.*