2014 VT 22

## Pauline Manning v. Michael Schultz

[93 A.3d 566]

No. 12-121

Present: **Reiber, C.J., Dooley, Skoglund and Burgess, JJ., and Bent, Supr. J., Specially Assigned**

Opinion Filed February 21, 2014

*Mary G. Kirkpatrick* of *Kirkpatrick & Goldsborough, PLLC,* South Burlington, for Plaintiff-Appellee.

*Susan M. Murray* of *Langrock Sperry & Wool, LLP,* Burlington, for Defendant-Appellant.

¶ 1. **Burgess, J.** The principal question presented in this appeal from a final judgment of divorce is whether, as husband contends, the trial court erred in its division of the marital estate by including an offset for the disparity in value between the parties'

projected Social Security retirement benefits. We conclude that this was error, and therefore reverse and remand.

¶ 2. The facts may be summarized as follows. The parties were married in 1992, and had three children who were still minors at the time of these proceedings. The parties separated in March 2010, and wife filed a complaint for divorce shortly thereafter. The trial court held a contested hearing over two days in February and April 2011. At the time of the hearing, wife worked part-time for a school district, earning approximately $14,000 a year with health insurance benefits. The court found that wife intended to return to school to obtain a master's degree in public administration, which could triple her earnings. During the marriage, husband worked for more than twelve years as a vice president at the University of Vermont, earning approximately $155,000 per year. Due to events not directly relevant to this appeal, husband resigned his position shortly after the conclusion of the hearing and the University provided him with a severance package. The court found that husband's future employment prospects were "unknown and speculative."

¶ 3. The parties did not agree on the assets to be included in the marital estate. Wife submitted a list of assets ("Exhibit D") with a total value of $1,152,325.86, including $88,158 identified as the difference between the present value of husband's and wife's projected Social Security benefits. The value was determined by wife's accountant and credited toward husband's suggested share of the marital estate, with a corresponding offset in value for wife. Wife proposed that she be awarded either sixty percent of the value of the entire estate plus spousal maintenance, or eighty percent without maintenance. Husband submitted a separate list of marital assets which totaled $978,504 and did not include the Social Security differential. Husband proposed an award to wife of sixty percent of the value of the estate plus rehabilitative maintenance for a period of several years.

¶ 4. In its written ruling, the trial court found that wife's proposed property division as set forth in her Exhibit D was "a reasonable one" and gave her the option of choosing either the eighty/twenty division that she had proposed or an award of sixty percent plus maintenance until she reached the age of sixty-seven. Wife subsequently opted for the higher percentage of the marital estate without the maintenance, and the trial court entered a final judgment consistent with that choice and with the proposed

division set forth in Exhibit D, attached to the judgment. Husband's two subsequent motions to reconsider were denied. This appeal followed.

¶ 5. ▮▮▮▮ Husband contends that, by including the Social Security differential in his portion of the marital estate and awarding wife $88,158 to offset the value, the trial court here violated both state and federal law. The federal claim is predicated on case law holding that the Social Security Act preempts state courts from treating Social Security retirement benefits in divorce proceedings as marital property to be valued and either divided or — as here — directly offset by other property. Wife maintains that the preemption claim was not raised in the trial court, and therefore, was not preserved for review on appeal. See *Rutland Herald v. Vt. State Police*, 2012 VT 24, ¶ 33, 191 Vt. 357, 49 A.3d 91 ("We will not entertain arguments on appeal if they were not preserved in the trial court."). Although husband observes, in response, that he objected to the trial court's consideration of Social Security benefits as unduly "speculative" in both his proposed findings and subsequent motions to reconsider, we do not find this sufficient to fairly apprise the trial court of the federal preemption claim.[1] See *State v. Ben-Mont Corp.*, 163 Vt. 53, 61, 652 A.2d 1004, 1009 (1994) ("To properly preserve an issue for appeal a party must present the issue with specificity and clarity in a manner which gives the trial court a fair opportunity to rule on it."). As we have frequently cautioned, "[a]n objection on one ground does not preserve an appeal on other grounds." *State v. Bubar*, 146 Vt. 398, 400, 505 A.2d 1197, 1199 (1985); see also *State v. Hinchliffe*, 2009 VT 111, ¶ 32, 186 Vt. 487, 987 A.2d 988 (holding that objection raising the "constitutional problem of notice" did not adequately preserve appeal based on claim that statute was "unconstitutionally vague and overbroad"); *State v. Bissonette*, 145 Vt. 381, 392, 488 A.2d 1231, 1237 (1985) (holding that objection to question on ground that matter was "collateral" did not preserve appeal on ground that it implicated prior bad act). Although, as discussed below, the claims are somewhat related, we cannot in good faith conclude that husband's argument

---

[1] In his proposed findings, husband asserted, more specifically, that "[a]ny value as to unrealized Social Security benefits is speculative as there is no way to predict either what the parties will be earning in the future, nor what may happen to the law governing Social Security benefits in the future."

based solely on the assertion that Social Security benefits are too speculative to be considered a marital asset fairly and reasonably apprised the trial court of a claim predicated upon federal preemption. Accordingly, we are compelled to conclude the claim was not properly preserved for review on appeal.

¶ 6. ■ This does not, however, end our analysis. As discussed below, an important facet of the federal preemption decisions is their recognition that Social Security benefits are not a property or contractual right amenable to division but rather a product of social-welfare legislation that is open to alteration, modification, reduction, or even elimination at the will of Congress. Wholly apart from the question of federal supremacy, therefore, we may conclude under our own state statutes and case law that the inherently uncertain and changeable nature of such benefits renders them too intangible to be characterized as marital property or considered in the division of the marital estate. Husband's objection on the ground that the parties' anticipated Social Security benefits were unduly speculative, therefore, was sufficient to preserve the state-law issue for review.

¶ 7. ■ In a seminal decision upholding a section of the Social Security Act providing for the termination of benefits to deported aliens, the U.S. Supreme Court held that the law did not deprive the petitioner of "an accrued property right." *Flemming v. Nestor*, 363 U.S. 603, 608 (1960). As the Court explained, the "noncontractual interest" of an employee covered by the Act could not be analogized to that of holder of an annuity or pension bottomed on contractual premium payments. *Id.* at 610. The beneficiary's interest rests, instead, on "a highly complex and interrelated statutory structure" continually responsive to "the manifold specific problems presented by the Social Security program." *Id.* While undoubtedly designed to function for the indefinite future, the Act's provisions rely "on predictions as to expected economic conditions which must inevitably prove less than wholly accurate, and on judgments and preferences as to the proper allocation of the Nation's resources which evolving economic and social conditions will of necessity in some degree modify." *Id.* Indeed, in recognition of the need for flexibility to adjust Social Security benefits to "ever-changing conditions," Congress expressly reserved the " 'right to alter, amend, or repeal any' " of the Act's provisions. *Id.* at 610-11 (quoting 42 U.S.C. § 1304).

¶ 8. ■ With the Social Security Act's inherent fluidity in mind, the U.S. Supreme Court has held that federal law precludes a state court from dividing or offsetting retirement benefits under analogous provisions of the Railroad Retirement Act, which provides retirement benefits for railway workers not covered by Social Security. *Hisquierdo v. Hisquierdo*, 439 U.S. 572, 588-89 (1979). While relying on a specific section of the Railroad Act — identical to a section in the Social Security Act — providing that retirement benefits may not be subject to attachment, garnishment "or other legal process," *id.* at 576, the Supreme Court observed that its holding barring consideration of such inherently fluid "expectations" also served to preserve "congressional freedom to amend the Act, and so serves much the same function as the frequently stated understanding that programs of this nature convey no future rights." *Id.* at 589.

¶ 9. ■ Relying, in turn, on these landmark Supreme Court decisions, state courts "have universally acknowledged that Social Security benefits are not marital property and are not subject to division in divorce actions." *Depot v. Depot*, 2006 ME 25, ¶ 6, 893 A.2d 995; see generally B. Turner, *Social Security: A 2005 Update*, 17 No. 4 Divorce Litigation 53 (2005) (noting that "state courts are in uniform agreement [that] Social Security benefits cannot be treated as marital or community property"). Courts that have considered the issue have also generally concluded that anticipated Social Security benefits may not be used as an offset to compensate one spouse for the allocation of marital benefits to the other. See, e.g., *Webster v. Webster*, 716 N.W.2d 47, 55 (Neb. 2006) ("The weight of authority has concluded that an offset of Social Security benefits is prohibited."); *Olson v. Olson*, 445 N.W.2d 1, 11 (N.D. 1989) (recognizing that "social security cannot be distributed or used as an offset in division of marital property"); see generally Turner, *supra*, 17 Divorce Litigation 53 ("State courts also agree that Social Security benefits cannot be divided indirectly by means of a direct setoff.").[2]

---

[2] In *McCarty v. McCarty*, 453 U.S. 210, 235-36 (1981), the high court also held that federal law prohibited state courts from allocating military retirement benefits as marital property. Congress subsequently countermanded the holdings in *Hisquierdo* and *McCarty* to make railroad and military retirement benefits subject to marital distribution, but failed to similarly amend the Social Security Act — an omission which courts have construed to confirm Congress's view that Social

¶ 10. State courts have divided, however, on whether Social Security benefits may be a general consideration in the trial court's equitable distribution of the marital estate, even if they are not expressly divided or used as an offset. Some have concluded that courts may consider a party's anticipated Social Security benefits, describing them variously as "one factor, among others, in making an equitable distribution," *Mahoney v. Mahoney*, 681 N.E.2d 852, 856 (Mass. 1997), a "relevant factor" in the court's division of marital property, *Depot*, 2006 ME 25, ¶ 18, or "a relevant and equitable factor in making an equitable distribution." *Neville v. Neville*, 2003-Ohio-3624, ¶ 11, 791 N.E.2d 434. Others have rejected this approach, concluding that it masks what otherwise still amounts to an offset in the asset distribution based on a prohibited expectancy. See, e.g., *In re Crook*, 813 N.E.2d at 205 ("Instructing a trial court to 'consider' Social Security benefits . . . either causes an actual difference in the asset distribution or it does not. If it does not, then the 'consideration' is essentially without meaning. If it does . . . [t]his works as an offset meant to equalize the property distribution."); *Wolff v. Wolff*, 929 P.2d 916, 921 (Nev. 1996) (" 'Considering' [wife's] social security benefits does not change the fact that this is still an offset, and therefore, error."); *In re Marriage of Swan*, 720 P.2d 747, 752 (Or. 1986) ("[T]he value of social security benefits of either spouse may not be considered in the division of property.").

¶ 11. ■ ■ Viewed in the light of our own law and precedents and the nature of the benefits at issue, we have little difficulty agreeing with those courts that have concluded that Social Security retirement benefits are not marital property and should not be divided, offset, or considered in the court's distribution of the marital estate. Under 15 V.S.A. § 751(a), "[a]ll property *owned* by either or both of the parties, however and whenever acquired, shall be subject to the jurisdiction of the court" for "equitable distribution." (Emphasis added.) As we have seen, however, it is well settled that Social Security retirement benefits are neither owned in any proprietary sense nor are they marital "property" subject to division. Instead, Social Security benefits are provided

Security benefits may not be divided as marital property. See, e.g., *In re Crook*, 813 N.E.2d 198, 204 (Ill. 2004); *Depot*, 2006 ME 25, ¶ 8; see also *Youngbluth v. Youngbluth*, 2010 VT 40, ¶ 12, 188 Vt. 53, 6 A.3d 677 (discussing federal law governing disposition of military retirement benefits).

by a federal social insurance system subject to revision at congressional will, and therefore cannot be more than an expectancy whose value cannot be "assessed without excessive speculation." *McDermott v. McDermott*, 150 Vt. 258, 260, 552 A.2d 786, 788 (1988); see also *Billings v. Billings*, 2011 VT 116, ¶ 18, 190 Vt. 487, 35 A.3d 1030 (holding that revocable trusts and wills are "only an expectancy" and therefore "are *not* marital property to be distributed by the court"). For this reason, therefore, such benefits cannot be considered marital property subject to division. See *Depot*, 2006 ME 25, ¶ 6 (noting that one reason courts have "universally acknowledged that Social Security benefits are not marital property" is that "as opposed to divisible property, Social Security benefits are a form of social insurance in which beneficiaries have a noncontractual interest" (quotations omitted)); *Olson*, 445 N.W.2d at 6 (observing that Congress's "retained power to alter, amend, or repeal [Social Security] benefits makes it awkward for the courts to count benefits as assets of definable value"); see generally Turner, *supra*, 17 Divorce Litigation 53 (observing that, because Social Security benefits may be modified at will by Congress, "it is doubtful whether they would constitute 'property' under state law even if an express [preemption] provision were not present").

¶ 12. Accordingly, we conclude that the trial court erred in treating the parties' respective anticipated Social Security benefits as assets of the marital estate, reducing them to a purported present value, allocating the differential to husband, and awarding wife a direct offset on account. Omitting the value of these benefits only marginally affects the marital estate, valued at over $1 million, and we therefore remand for the trial court to recalculate the award pursuant to the original percentage division of eighty percent for wife and twenty percent for husband.

*Reversed and remanded for further proceedings consistent with the views expressed herein.*